IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| ROY E. SADLER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. |
| v. | § | |
| | § | 3:09-CV-739-K |
| TRINITY RIVER AUTHORITY | § | |
| OF TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

Before the court is Defendant Trinity River Authority of Texas' ("Trinity River") Motion for Summary Judgment (Doc. No. 20). Because Trinity River demonstrates that no issue of material fact exists in regards to any of Plaintiff Roy Sadler's claims, Trinity River's Motion for Summary Judgment is **GRANTED** and all of Sadler's claims are **DISMISSED with prejudice**.

I.  Background

Roy Sadler was hired by Trinity River in January of 2008 for a position entitled Operator I. As an Operator I, Sadler performed tests and routine maintenance at Trinity River's wastewater facility in Dallas. Before being hired by Trinity River, Sadler had knee problems from an accident he suffered in 2003 while helping his father with plumbing work. Sadler is prescribed the pain medication Hydrocodone for Reflex Sympathetic Disorder Syndrome ("RSDS"), a complication resulting from his knee

-1-

injury.

In April of 2008, Sadler received what Trinity River called a Record of Employee Contact. This Record amounted to a letter in Sadler's personnel file which was issued when Sadler failed to notify his supervisor that he would not be coming to work on April 4, 2008. Sadler received verbal and written warnings for not following Trinity River procedure, and was advised that future occurrences may result in disciplinary action, up to and including termination.

On May 17, 2008, Sadler was involved in an automobile accident as he was leaving work around 6 p.m. Sadler was driving his own car when he struck a curb, jumped that curb, and ran over several crape myrtle shrubs at Trinity River's workplace complex. This accident was witnessed by one of Sadler's co-workers, Mr. Raudel Juarez. Sadler asserts that the accident occurred because he lost control of his car when a tire blew out, which the court will accept as true for the purposes of this Motion. Sadler was terminated on May 28, 2008, after roughly five months with Trinity River. He was summoned to a meeting with Trinity River managers Don Tucker and Mike Young, who explained that Sadler's termination was for poor job performance. Sadler claims that his RSDS was mentioned at the termination meeting, which the court will accept as true for the purposes of this Motion. Sadler received a termination letter with an explanation for his discharge, his final paycheck, and information on continuing benefits.

Sadler pursued his discrimination claims through the Equal Employment Opportunity Commission until January 30, 2009. Sadler received his Notice of Right-to-Sue and filed this lawsuit on April 22, 2009. Trinity River filed its Motion for Summary Judgment on September 9, 2010.

## II.     Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Triple Tee Golf, Inc. V. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 322–25. Once a movant makes a properly supported motion, the burden shifts to the non-movant to show that summary judgment should not be granted; the non-movant may not rest upon the allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the existence of a genuine fact issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255–57 (1986).

A genuine issue of material fact exists if a reasonable jury could return a verdict for the non-moving party in the face of all evidence presented. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009). A fact is material if it could affect the

outcome of the lawsuit under the governing law. *Id.* All evidence and reasonable inferences must be viewed in the light most favorable to the non-movant. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III. Analysis

Sadler has asserted claims under the Americans with Disabilities Act ("ADA") and the Texas Commission on Human Rights Act ("TCHRA"). The TCHRA, Tex. Labor Code § 21.001 *et seq.*, is patterned after Title VII of the Civil Rights Act of 1965. *See NME Hospitals, Inc. v. Rennels*, 994 S.W.2d 142, 144 (Tex. 1999). The law governing Title VII and the TCHRA is identical. *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 n.2 (5th Cir. 1999); *see also Michael v. City of Dallas*, 314 S.W.3d 687, 690 (Tex. App.—Dallas 2010, no pet.). Therefore, this court will consider these claims together.

### A. *Prima facie* case

"The ADA is a federal anti-discrimination statute designed to remove barriers which prevent qualified individuals with disabilities from enjoying the same employment opportunities that are available to persons without disabilities." *Taylor v. Principal Fin. Group, Inc.,* 93 F.3d 155, 161 (5th Cir. 1996). A plaintiff may establish a claim of disability discrimination by presenting direct evidence of discrimination. Alternatively, the indirect method of proof used in Title VII actions under *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 (1973), may also be utilized. *See Daigle v. Liberty Life Ins. Co.,*

70 F.3d 394, 396 (5th Cir. 1995).

Under the *McDonnell Douglas* burden-shifting framework, Sadler must first present a *prima facie* case that: (1) he has a disability; (2) he was qualified for the job; (3) he was subject to an adverse employment action because of his disability; and (4) he was replaced by someone who was not disabled, or treated less favorably than non-disabled employees. *See McDonnell Douglas*, 411 U.S. at 802; *McInnis v. Alamo Cmty. Coll. Dist.*, 207 F.3d 276, 279–80 (5th Cir. 2000). If this is accomplished, the burden shifts to the employer to advance a legitimate, non-discriminatory reason for the adverse employment action. *McInnis*, 207 F.3d at 280. If the employer advances such a reason, the plaintiff must show by a preponderance of the evidence that the reason is a pretext for discrimination. *Id*. In this case, Sadler has not presented any direct evidence of disability discrimination. Therefore, his claims will be examined using the circumstantial framework under *McDonnell Douglas*.

> 1. **Was Sadler disabled or did he possess a record of being disabled?**

A disabled individual is someone that: (1) has a physical or mental impairment that substantially limits one or more major life activities; (2) has a record of such an impairment; or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(1) (2009). Major life activities include walking, seeing, hearing, learning, and working. 42 U.S.C. § 12102(2) (2009); *Atkins v. Salazar*, 2010 WL 3937960 (N.D. Miss. Oct. 5, 2010). "Substantially limits" means a person is significantly restricted as to the

condition, manner, or duration under which he can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity. *E.E.O.C. v. Agro Distribution, LLC*, 555 F.3d 462, 469 (5th Cir. 2009) (citation omitted).

Sadler suffered a knee injury years ago, and as a result of that injury also has a condition called RSDS in his right knee. App. to Pl. Resp., Exh. A at 2; *Id*. at Exh. C. RSDS, according to Sadler's physician, causes "hypersensitive" pain in Sadler's knee and makes it difficult to walk or stand for long periods of time. *Id*. Sadler's physician has prescribed him a low dosage of Hydrocodone to help control the pain in his knee. *Id*.

Trinity River argues that Sadler was not "disabled" within the meaning of the ADA because his impairment did not substantially interfere with his major life activities. Sadler denies that RSDS has ever interfered with his job duties at Trinity River. Sadler Depo. at 215:20–216:4; App. to Def. Mot. at 20–21. Sadler has never requested an accommodation, or any help whatsoever, to assist him in performing his job. Sadler Depo. at 210:13–16; App. to Def. Mot. at 18. Sadler never notified anyone with Trinity River that his knee injury limited his ability to do his job in any way. Sadler Depo. at 211:8–11; App. to Def. Mot. at 19. Sadler himself does not allege that he was disabled, only that he was "perceived" as disabled by Trinity River. Pl. Resp. at 9.

Sadler has set forth no evidence that creates a genuine issue of material fact as to whether he was disabled or had a record of being disabled within the meaning of the

ADA. This means that Sadler can only qualify as disabled if he was "regarded as having an impairment." 42 U.S.C. § 12102(1) (2009).

## 2. Was Sadler regarded as being disabled?

In addition to prohibiting adverse employment actions based on actual disabilities, the ADA also disallows adverse actions based on perceived disabilities. *Id*.; *Murphy v. United Parcel Serv., Inc.*, 527 U.S. 522–23 (1999). Conclusory allegations, speculation, and unsubstantiated assertions are insufficient to carry the non-movant's burden when responding to a motion for summary judgment. *Douglass v. United Serv. Auto Ass'n*, 79 F.3d 1415, 1429 (5th Cir. 1996)(en banc).

Sadler asserts that Trinity River incorrectly believed that his physical impairments interfered with his job and that Trinity River fired him as a result. In support, Sadler has offered four pieces of evidence: (1) his own deposition testimony that someone with Trinity River called him a "drug addict," Sadler Depo. at 131:14–18; App. to Pl. Resp., Exh. A at 4; (2) Sadler's deposition testimony that RSDS was brought up at his termination meeting, Sadler Depo. at 133:1–14; App. to Pl. Resp., Exh. A. at 5; (3) testimony from Buzz Thornton, a Trinity River manager, that Sadler assured him Sadler's knee injury would not be a problem, Thornton Depo. at 16:1–5; App. to Pl. Resp., Exh. E at 2; and (4) testimony similar to Thornton's from Sadler's co-worker Raudel Juarez, *Id*., Exh. F at 2.

### a. "Drug addict" comment

In Sadler's response, he argues that Trinity River manager Mike Young called Sadler a "drug addict." Pl. Resp. at 10. However, it is not clear from Sadler's deposition when this statement was made, the context in which it was made, or even who made it. Sadler Depo. at 131:14–18; App. to Pl. Resp., Exh. A at 4. At best, this evidence is inconclusive. *Douglass*, 79 F.3d at 1429. In addition, Sadler has testified that Buzz Thornton told him before a drug test that it was fine that Sadler used medication so long as Sadler had a prescription for it. Sadler Depo. at 123:17–23; App. to Pl. Resp., Exh. A at 4. The court finds that the "drug addict" comment is an unsubstantiated assertion, which is insufficient to carry Sadler's burden as the non-movant. *Douglass*, 79 F.3d at 1429.

### b. RSDS discussion during termination meeting

Sadler has submitted his own deposition testimony that RSDS was discussed in his termination meeting. Sadler Depo. at 133:1–14; App. to Pl. Resp., Exh. A. at 5. However, Sadler cannot remember who brought up RSDS or how it came up. *Id*. The only other evidence on what happened in that meeting are the Record of Employee Contact sheet from Trinity River and Sadler's termination letter. App. to Def. Mot., Exh. J and K. Neither the Record nor the letter reference anything but Sadler's job performance. *Id*. Even taking Sadler's deposition testimony as true, it is not sufficient to raise a genuine issue of material fact as to whether Trinity River regarded Sadler as

disabled. *Douglass*, 79 F.3d at 1429.

### c. Thornton's comment about Sadler's knee injury

The exchange in Trinity River manager Buzz Thornton's deposition that Sadler cites is as follows:

> Q: Now, did that previous injury – knee injury prevent him [Sadler] from working?
>
> A: No, he assured me it wasn't a problem.

Thornton Depo. at 16:1–5; App. to Pl. Resp., Exh. E at 2. In context, the court does not read Thornton's comment to express concern over Sadler's ability to do his job. Thornton answered in the very next question that Thornton did not know of any occasion when Sadler's knee injury rendered Sadler unable to do his job. Thornton Depo. at 16:6–25; App. to Pl. Resp., Exh. E at 2. Thornton's comment is insufficient to carry Sadler's burden. *Douglass*, 79 F.3d at 1429.

### d. Juarez's comment about Sadler's knee injury

Sadler argues that his co-worker Raudel Juarez's comments on his knee brace are evidence of perceived disability. Juarez Depo. at 9:19–25; App. to Pl. Resp., Exh. F at 2. In context, the court reads Juarez's comments to express concern for Sadler's well-being, not a belief that Sadler was disabled. *See id*. Regardless, what Raudel Juarez, one of Sadler's co-workers, said or did is largely irrelevant to an inquiry into whether Trinity River regarded Sadler as disabled. *See Deas v. River West, L.P.*, 152 F.3d 471, 476 n. 9 (5th Cir. 1998). The focus of a "regarded as" claim is the perceptions of the relevant

decision-makers working with the plaintiff; the beliefs or perceptions of other individuals involved have little legal significance. *Id.* Because Juarez was one of Sadler's co-workers and not a decision-maker, Juarez's deposition testimony is not evidence that Trinity River regarded Sadler as disabled. *Id*.

Sadler has not presented evidence to create a genuine issue of material fact that he was regarded as disabled by Trinity River. Therefore, Sadler has not presented a *prima facie* case of disability discrimination because he has not shown he was disabled within the meaning of the ADA.

**B. Legitimate, non-discriminatory reason for Sadler's termination**

Even if Sadler had presented a *prima facie* case of discrimination, which he has not, Trinity River may give a legitimate, non-discriminatory reason for firing him. Once the employee has made out a *prima facie* case of discrimination, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the adverse employment action. *EEOC v. Chevron Phillips Chemical Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).

Trinity River asserts that Sadler was terminated for poor job performance. In support, Trinity River has produced two Records of Employee Contact regarding Sadler's job performance. *See* App. to Def. Mot., Exh. J and K. The contents of Exhibit K, that Sadler failed to notify his supervisor that he was not coming to work on April 4, 2008, are undisputed. The fact that Sadler ran off the road and over some shrubs on Trinity

River's property when leaving work on May 17, 2008 is also undisputed. *Id.*, Exh. J at 2. The court accepts poor job performance as a legitimate, non-discriminatory reason for Sadler's termination.

  **C.** **Was Sadler's "poor job performance" a pretext for discrimination?**

  Sadler claims that Trinity River's reason for terminating him, poor job performance, is merely a pretext for discrimination based upon his perceived disabilities. *See Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 147 (2000)(a court may infer discriminatory intent from the stated reason for an employee's termination). Sadler argues that poor job performance was pretext because he was not responsible for the car accident and that a tire blow-out caused him to jump the curb. Even if Trinity River was wrong about the cause of the car accident or its other reasons for terminating Sadler, a violation of the ADA does not occur unless discrimination played a role in the decision. *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). An employer is not required to make proper or wise decisions under the ADA, only non-discriminatory ones. *Id*. Motive for the adverse employment action is the issue, *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991), and Sadler has presented no evidence that Trinity River did not believe in good faith that Sadler had run off the road due to his own poor driving.

  Sadler also argues as evidence of pretext that Trinity River management and employees knew about his knee problems because he had been seen with a brace on the

knee. Simply showing that an employer was aware of an employee's injury prior to that employee's termination is not enough to survive summary judgment. *Cato v. First Fed. Cmty. Bank*, 668 F. Supp. 2d 933, 942 (E.D. Tex. 2009)(Schell, J.). The fact that Trinity River's management and employees were aware of Sadler's knee injury is not sufficient summary judgment evidence that Sadler was terminated because of his alleged disabilities.

IV. **Conclusion**

No genuine issue of material fact exists concerning the inability of Sadler to recover on his ADA claim. Therefore, Trinity River's Motion for Summary Judgment is **GRANTED** and Sadler's claim is **DISMISSED with prejudice**.

**SO ORDERED**

Signed December 13th, 2010.

*Ed Kinkeade*
ED KINKEADE
UNITED STATES DISTRICT JUDGE